IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>59 BRENTWOOD STREET,<br>MARTINSBURG, WEST VIRGINIA | Case No. 3:19mj3<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Sergeant Jonathan Bowman being first duly sworn, hereby depose and state as follows:

INTRODUCTION AND AGENT BACKGROUND

1. I am a Senior Investigator with the West Virginia State Police Bureau of Criminal Investigation. I have been with the West Virginia State Police (WVSP) for over fourteen (14) years. I was hired by the West Virginia State Police in August of 2004 and graduated the West Virginia State Police Academy in February of 2005. I worked as a uniformed Trooper at the WVSP-Martinsburg Detachment until September of 2014.

2. Since September of 2014, I have been assigned to work on the Eastern Panhandle Drugs and Violent Crimes Task Force (EPD&VCTF) and am deputized by the U.S. Department of Justice, Federal Bureau of Investigation as a "Special Federal Officer." As such, I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and am empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

3. My experience includes work as a uniformed Trooper conducting criminal and drug investigations, and as such, I have become associated with drug dealers and users. Through my training, education and experience, I have become familiar with the manner in which illegal drugs are transported, stored, and distributed; the methods of arranging drug transactions, the methods of payment for such drugs; the possession and use of firearms in connection with the trafficking of such drugs; and the manner in which narcotics traffickers store and conceal the proceeds of their illegal activities. I have conducted multiple drug enterprise investigations in which Title –III interception authority has been sought and obtained. To date I have participated in numerous Title-III investigations that have been approved and authorized in the Northern District of West Virginia.

4. I am currently participating in the investigation into heroin trafficking by numerous subjects, including ARMSTEAD CRAIG, who have conspired to, and engaged in the trafficking of

1

large quantities of heroin from Baltimore, Maryland, to the Eastern Panhandle of West Virginia, specifically Jefferson County, in the Northern District of West Virginia. The investigation includes electronic surveillance of the subjects, and Task Force Officers have observed suspected heroin and cocaine deals. Task Force officers have conducted electronic surveillance and physical surveillance of CRAIG and other co-conspirators.

5. All information contained in this affidavit, from whatever source derived, is either personally known to me or has been related to me by other sworn law enforcement personnel. This affidavit does not contain all facts known to law enforcement officials about the investigation described herein.

It has been my experience that:

6. Individuals who participate in trafficking of illegal controlled substances keep such controlled substances, as well as paraphernalia, in their residences, vehicles, and storage units. In addition, people who deal in illegal controlled substances also maintain books, records, receipts, notes, ledgers, bank records, money orders, and other papers relating to the importation, manufacture, transportation, ordering, sale, and distribution of illegal controlled subjects. These books, records, receipts, notes, ledgers, bank records, money orders, etc., are maintained in locations to which the dealers in illegal controlled substances have ready access, such as in secure locations within their residences and their curtilage, the residences of family members, friends, and associates, the places of operation of their drug distribution activities, such as stash houses or safe houses, in business locations with which the trafficker is associated, or in storage areas. I know that individuals involved in narcotics distribution often maintain these records for lengthy periods of time, and often hide them in places in their homes to avoid detection. Further, these individuals who deal in illegal controlled substances often store hard copy and electronic records associated with their illicit narcotics trafficking for long periods of time.

7. Individuals engaged in conspiracies to distribute Heroin and possess with intent to distribute heroin routinely conceal in their residences or curtilage, the residences of family members, friends, and associates, as well as their other business locations, storage areas, safety deposit boxes, or in the places of operation of their drug distribution activities, such as stash houses or safe houses, large quantities of currency, financial instruments, precious metals, jewelry and other items of value, typically proceeds of illegal controlled substance transactions.

8. Individuals engaged in conspiracies to distribute heroin and possess with intent to distribute heroin commonly maintain telephone numbers and address books or papers which reflect names, addresses, or telephone numbers for their associates in their illegal organizations. These individuals often utilize cellular telephones, paging and telephone systems to maintain contact with the associates in their illegal business. These telephone records, bills, and pager numbers are often found in their place of residence, or the residences of family members, friends, or associates, in their business locations, or in the place of operation of their drug distribution activities, such as stash houses, safe houses, or storage areas.

9. Individuals engaged in the type of criminal conduct described herein often photograph themselves, their associates, their property, and illegal contraband. These photos are usually maintained in their place of residence, or the residences of family members, friends, or associates, in their business locations, or in the places of operation of their drug distribution activities, such as stash houses, safe houses, or storage areas.

10. Individuals engaged in the type of criminal conduct described herein often use firearms to further their criminal activity. These individuals often carry or store firearms on their person and in their residences, vehicles, and storage units. Firearms may be used for personal protection and to protect the illegal contraband. Firearms may also be traded for other illegal contraband.

11. Through my training and experience, I have become familiar with the methods of operations typically utilized by individuals who distribute drugs. I know that it is common practice for drug traffickers to routinely utilize telephones, mobile phones, prepaid phones, calling cards, text messaging, counter-surveillance, false or fictitious identities, and coded communications to communicate with their customers, suppliers, and other conspirators for the purpose of insulating themselves from the detection of law enforcement. Moreover, it is not unusual for them to initiate such mobile or prepaid phone service in the name of an associate or family member or in the name of a fictitious individual. The individuals often require the use of a telephone facility to negotiate times, places, schemes, and manners for importing, possessing, concealing, and distributing controlled substances, and for arranging the concealment of proceeds derived from the sale of controlled substances.

I further depose and state that:

Northern District of West Virginia Title III Wiretap Authorizations

12. On September 18, 2018, Chief United States District Judge Gina Groh authorized interception of 304-279-7128 (TP2) filed at Northern District of West Virginia (NDWV) case number 3:18MC104. Interception began on September 18, 2018 and authorized through October 18, 2018. TP2 was confirmed to be utilized by and in the possession of JANSEN CARR (herein referred to as "Jansen") and VICTOR CARR (herein referred to as "Vic") during the captioned period of interception. Interception of TP2 ceased on October 5, 2018.

13. On October 5, 2018, Chief United States District Judge Gina Groh authorized the initial interception of 304-240-6755 (TP3) and 304-240-2076 (TP4) filed at Northern District of West Virginia (NDWV) case number 3:18MJ99. Interception began on October 5, 2018 and ceased on November 5, 2018.

14. On November 6, 2018, Chief United States District Judge Gina Groh authorized a 30-day extension to intercept 304-240-6755 (TP3) and an initial authorized interception of 240-586-3412 (TP5) filed at Northern District of West Virginia (NDWV) case number 3:18MJ103. Interception began on November 6, 2018 and terminated on December 5, 2018.

15. On December 11, 2018, an extension was authorized by Chief United States District Judge Gina Groh to continue interception, for a 30-day period, of TP3 and TP5. The authorized extension is scheduled to terminate on January 9, 2019.

16. ARMSTEAD CRAIG also known as (aka) "Manny", JANSEN CARR, MOLLY HUBER, BONI FACIO ARAMBURO also known as "Bunz" herein referred to as BONELLI, and SANDRA ARAMBURO aka "Sandra Craig", HOPETON NEWMAN, SHAWN MURRAY as well as several additional drug co-conspirators, were confirmed to have been intercepted over the noted authorized interceptions is initial authorized interception.

Subjects and Offenses

17. I have participated in the investigation of the drug trafficking activities related to ARMSTEAD CRAIG, a/k/a "Manny", JANSEN CARR, MOLLY HUBER, and SANDRA ARAMBURO aka "Sandra Craig", BONI FACIO ARAMBURO also known as "Bunz" herein referred to as BONELLI, HOPETON NEWMAN, SHAWN MURRAY and other identified and yet to be identified drug trafficking co-conspirators. The investigation has revealed that CRAIG distributes crack cocaine and heroin in the Northern District of West Virginia.

Investigative Objectives

18. There is probable cause to believe that BONELLI, has and is currently utilizing the residence described at 59 Brentwood St., Martinsburg, Berkeley County, WV, to store, maintain, conceal, and distribute illegal narcotics; more specifically, heroin, a Schedule I narcotic drug, as well as the items listed in Attachment B, which are evidence of drug trafficking.

Facts and Circumstances

19. On Saturday, September 22, 2018, TFOs intercepted communications via court authorized Title III (3:18MC104) between JANSEN, utilizing cellular telephone (304) 279-7128, and BONELLI utilizing (304) 268-9737, wherein JANSEN contacts BONELLI and negotiated a narcotics transaction where BONELLI was to deliver a ½ gram of heroin for $70 to JANSEN. The authorized interception later revealed that BONELLI was sending an unknown 3rd party to deliver the heroin to JANSEN.

20. Investigators checked DMV records and were able to identify a residence utilized by BONELLI. The residence listed on DMV records for BONELLI is 59 Brentwood St., Martinsburg, Berkeley County, WV.

21. On, Thursday, October 25, 2018, investigators conducted surveillance of 59 Brentwood St., Martinsburg, Berkeley County, WV and observed BONELLI coming and going from the residence. BONELLI was observed occupying a silver Nissan Armada bearing WV 52E 291 registration. That Nissan is registered to Carmen Gonzalez of Charles Town, WV. BONELLI has also been observed occupying a grey Chevrolet Traverse bearing WV O2W975

registration. That Chevrolet is registered to Jason Arambul and/or Tiara Parson of 59 Brentwood St, Martinsburg, WV.

22. On Tuesday, November 20, 2018, EPD&VCTF obtained a GPS Search Warrant and PEN trap and trace for SPRINT cellular telephone (681) 242-8664, utilized by BONELLI.

23. On, Tuesday, November 20, 2018, TFOs intercepted communications via court authorized Title III (3:18MJ103) between BONELLI, utilizing cellular telephone (681) 242-8664, and Armstead CRAIG, herein referred to as CRAIG, utilizing cellular telephone (240) 586-3412, where CRAIG is asking BONELLI if he had left town to get resupplied. BONELLI advises that he has been put on hold. CRAIG advises BONELLI that he may have to go to a different supplier. BONELLI advises CRAIG that he did not want the same heroin and would rather not go that direction. During the authorized interception, BONELLI advises CRAIG that he currently has 25 grams of heroin. BONELLI gives CRAIG a price of $120 a gram. CRAIG advises BONELLI that he is going to contact someone so see what they are going to do and he will call BONELLI back. During this call BONELLI utilized cellular telephone (681) 242-8664 which is serviced by SPRINT.

24. On Saturday, November 24, 2018, TFOs intercepted communications via court authorized Title III (3:18MJ103) between Terrance MURPHY, utilizing cellular telephone (301) 283-7077, herein referred to as MURPHY, and CRAIG, utilizing cellular telephone (240) 586-3412, where CRAIG contacts MURPHY to supply heroin to BONELLI. MURPHY advises he would bring it down if he could find a driver. MURPHY advises CRAIG to make sure BONELLI is available. During the conversation CRAIG refers to a "Mustang 5.0" when speaking with MURPHY. During the course of the investigation, Investigators have learned that CRAIG speaks in code when referring to narcotics.

25. On Sunday, November 25, 2018, TFOs intercepted communications via court authorized Title III (3:18MJ103) between Terrance MURPHY, utilizing telephone number (240) 520-4684, CRAIG where MURPHY asks CRAIG if BONELLI still needed the heroin and that a driver was available. CRAIG advises MURPHY that BONELLI is available. Later in the day, an unknown male utilized cellular telephone number (240) 520-4684, herein referred to as UNSUB 4684, contacted CRAIG and advises he was on his way to meet BONELLI.

26. On Monday, November 26, 2018, TFOs intercepted communications via court authorized Title III (3:18MJ103) between CRAIG, utilizing cellular telephone (240) 586-3412, and BONELLI, utilizing cellular telephone (681) 242-8664, where CRAIG asks BONELLI if the heroin supply arrived. BONELLI advises that it did. During the conversation, BONELLI advises that he is laying down in bed with his significant other. CRAIG questions the quality and color of the heroin supplied. BONELLI describes the color and texture of the heroin to CRAIG. BONELLI questions CRAIG on the amount of heroin he advised MURPHY to supply. CRAIG again refers to the heroin as "Mustang 5.0". Investigators believe this to be code for 50 grams. BONELLI agrees and advised the supplier tried to supply an amount that BONELLI referred to as a "buck".

27. On Friday, December 14, 2018, TFO's intercepted communications via court authorized Tittle III (3:18MJ120) between CRAIG, utilizing cellular telephone (240) 586-3412, and BONELLI, utilizing cellular telephone (681) 242-8664, where BONELLI contacts CRAIG. BONELLI advises CRAIG that he might need $3,000 to $4,000 from CRAIG because he had received a phone call from his heroin supplier and he did not have all the money to get what he wanted. BONELLI advises CRAIG that he is going to try and go all-in. CRAIG advises BONELLI that CRAIG needed to sell some narcotics that he currently has. BONELLI tells CRAIG that he is going to contact the supplier when he gets the money together and hopes to be ready by the weekend.

28. On December 23, 2018, wire monitors intercepted communication over TP3 where an unknown male contacts CRAIG by text message and tells him he is going to hurt his son. CRAIG calls the male and attempts to figure out who the caller is and why he wants to beat up his son. The male identifies himself as CORY. The male is uncooperative on the phone and continues to tell CRAIG is he going "fuck him up and his son." After this series of calls, CRAIG contacts MICHAEL HUGHES and asks him to get his gun and pick him up. HUGHES advises JANSEN is closer to call him. CRAIG calls JANSEN and directs him to get his gun and drive CRAIG's vehicle parked at his house and pick him up. CRAIG advises he has to go to CRAINES. The unknown male continues to threaten via text message CRAIG's family and associates. The unknown male calls him a bad parent and drug dealer.

29. The EPD&VCTF after receiving these calls, contacted Ranson Police Department and informed them of the possible violent altercation to take place in Ranson, WV. The uniformed officer was unable to observe CRAIG and the unidentified male. The EPD&VCTF traveled to Ranson, WV in attempt to surveil and if needed intercept CRAIG's vehicle. The video surveillance revealed CRAIG return with JANSEN to 96 Stayman Dr. and enter a Buick driven by SANDRA. They were followed to Martinsburg, WV. It was revealed through wire interceptions SANDRA and CRAIG were going Christmas Shopping. One of CRAIG's final conversation with the unknown male was "you are a joke." These intercepted communications reveal that CRAIG (a convicted felon) continues to have access to, possess, and use firearms. Moreover, CRAIG utilizes other individuals in the drug trafficking organization to store his firearms.

30. On Tuesday, December 25, 2018, TFO's intercepted communications via court authorized Title III (3:18MJ120) between CRAIG, utilizing cellular telephone (240) 586-3412, and BONELLI utilizing cellular telephone (681) 242-8664, where BONELLI advises CRAIG that he was supplied 100 grams of heroin on December 24, 2018. BONELLI advised that he did not call CRAIG last night because he wanted to get someone to test it first. BONELLI advises that he had someone test the heroin for him and that person said it was good. CRAIG asks about the cost of the heroin and BONELLI advises almost $7,000. BONELLI tells CRAIG that he complained about the price and the supplier told BONELLI to give him $6500. CRAIG advises the same supplier told him $5400 but it will be done up the way the supplier makes it. CRAIG says he didn't want to do it that way. BONELLI asks CRAIG if he still has the substance from GNC that he had given him. CRAIG advises that he does. CRAIG asks if BONELLI was going to add 40 grams to it and BONELLI advises that is exactly what he is

going to do. BONELLI advises CRAIG that he will be down on this date to get the GNC substance.

### Conclusion

31. The facts and circumstances stated herein establish probable cause that Armstead CRAIG and BONELLI are engaged and will continue to be engaged in the commission of the distribution of and possession with intent to distribute heroin, and the search of the residence at 59 Brentwood St., Martinsburg, Berkeley County, WV, will result in the acquisition of sufficient relevant evidence of the commission of these offenses.

32. Your affiant believes that failure to maintain the confidentiality of the ongoing investigation would jeopardize the use of information already obtained in the investigation and would impair the continuation of the investigation, wherefore, Sergeant Bowman respectfully petitions that this Honorable Court seal the attached application for this search and seizure warrant until the appointed court orders the release of this affidavit.

33. As a result of extensive observation, authorized interceptions, and investigation, EPD&VCTF investigators are aware that this drug trafficking organization, including ARMSTEAD CRAIG and JANSEN CARR, are engaging in drug transactions during all hours of the day and night. Due to the fact that multiple drug transactions have been observed to have occurred between the hours of 10:00 pm and 6:00 am, investigators are seeking authority to execute these search warrants during any time, day or night, where officer safety and evidence preservation are of primary concern.

### Oath

The information in this affidavit is true to the best of my knowledge and belief.

FURTHER AFFIANT SAYETH NAUGHT

Jonathan Bowman
Sergeant West Virginia State Police
Eastern Panhandle Drug & Violent Crimes Task Force

Subscribed and sworn to before me this 28th day of December, 2018.

Robert Trumble
United States Magistrate Judge
Northern District of West Virginia